UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| LESLIE SHANLEY and ERIN EIZELMAN, individually and on behalf of all others similarly situated, | Case No. 22-CV-0319 (PJS/JFD) |
| Plaintiffs, | |
| | ORDER |
| v. | |
| EVEREVE, INC., | |
| Defendant. | |

---

Michael Palitz, SHAVITZ LAW GROUP, P.A.; Adam W. Hansen, APOLLO LAW LLC, for plaintiffs.

Rodolfo Gomez, Charles A. Roach, and Steven Reardon, FORDHARRISON LLP, for defendant.

This matter is before the Court on the parties' renewed joint motion to approve their settlement of this Fair Labor Standards Act ("FLSA") collective action. At the hearing on the parties' initial motion, the Court asked the parties to file supplemental briefing regarding recent Eighth Circuit case law on FLSA settlements. After reviewing that briefing and conducting a significant amount of independent research, the Court finds that (1) it has authority to determine whether the settlement of plaintiffs' claim for unpaid wages should be approved as fair and reasonable; (2) it does not have authority to review the settlement of plaintiffs' claim for attorney's fees; and (3) it must reject the

settlement of plaintiffs' claim for unpaid wages because the settlement of that claim was not negotiated separately from the settlement of the attorney's-fees claim.

## I.  BACKGROUND

Plaintiffs Leslie Shanley and Erin Eizelman worked for defendant Evereve, Inc. ("Evereve") as assistant store managers.  ECF No. 1 ¶ 8.  Shanley and Eizelman allege that they and other assistant store managers regularly worked more than 40 hours per week but that Evereve did not pay them the full amount of their FLSA-mandated overtime pay.  *Id.* ¶¶ 9–10, 21.  Instead, Shanley and Eizelman contend, Evereve improperly classified them and other assistant store managers as exempt from the FLSA's overtime-pay requirements.  ECF No. 27 ¶ 12.

Following two mediation sessions and extensive negotiations, the parties executed a settlement agreement in January 2022.  *Id.* ¶ 16.  Conditioned on the Court's approval, the settlement agreement would create a common settlement fund of $200,000, to be paid by Evereve.  *Id.* ¶ 18; ECF No. 38-1 at 5.[1]  From that common fund, one-third (approximately $66,667) would be paid to plaintiffs' counsel as attorney's fees, and about $2,930 would be used to reimburse counsel's out-of-pocket litigation costs.  ECF No. 27 ¶¶ 28, 32 ($2,527.50); ECF No. 28 ¶ 4 ($402).  The fund's administrator

---

[1]When citing documents by ECF number, the Court cites the page numbers generated by the Court's electronic docketing system rather than the document's internal pagination.

would receive $11,500 in fees, and the two named plaintiffs would each receive a $5,000 service payment.  ECF No. 27 ¶¶ 24, 26.  The remainder of the fund (about $108,903) would then be apportioned among Shanley, Eizelman, and any other qualifying assistant store managers who opted into the action according to a formula based on the number of weeks that each assistant store manager worked during the time period at issue.  *Id.* ¶ 22.  In exchange for these payments, the named and opt-in plaintiffs would release all claims against Evereve related to the alleged FLSA violations.[2]  ECF No. 38-1 at 6, 13–15.

The Court held a hearing on the parties' joint motion to approve the settlement agreement.  At the hearing, the Court expressed concern that the parties had not discussed recent Eighth Circuit cases that directly addressed two issues implicated by their motion:  first, whether the Court has authority to review and approve FLSA settlements, *see Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019), and second, if that authority exists, whether the Court may approve an FLSA settlement in which the parties agreed that the attorney's-fees claim would be settled by giving the attorneys a percentage of the overall amount paid by the defendant to settle the case, *see Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 853–55 (8th Cir. 2021).  Pending briefing on these

---

[2]The named plaintiffs also agreed to a general release of claims.  ECF No. 38-1 at 14–15.

questions, the Court denied without prejudice the parties' motion to approve the settlement agreement.  ECF No. 35.

The parties have now renewed their motion and filed a joint supplemental brief addressing the two issues identified by the Court.  ECF Nos. 37–38.[3]

## II.  ANALYSIS

### A.  Settlement of FSLA Actions Outside of the Eighth Circuit

The FLSA's "principal congressional purpose" is "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'"  *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)).  The statute

---

[3]At the hearing, the Court also suggested that the parties clarify some aspects of the proposed settlement agreement, including the allocation formula for dividing the remaining amount of the common fund among plaintiffs, the scope of the claims release, and the notice to be mailed to potential opt-in plaintiffs.  Although the parties have revised the proposed agreement to address most of these concerns, ECF Nos. 38, 38-1, at least one problem remains.

The new notice to potential opt-in plaintiffs does not accurately describe the allocation formula set forth in the settlement agreement.  The notice states that "[t]he number of points [an opt-in plaintiff] receive[s] will be divided by the total number of points received by everyone who *opts in* to the Collective Action . . . ."  ECF No. 38-1 at 23 (emphasis added).  But the Settlement Agreement provides that the denominator is the sum of "all points for all *Potential* Opt-In Plaintiffs."  *Id.* at 11 (emphasis added).  The claim notice therefore misleadingly implies that opt-in plaintiffs will split the entire $108,903 that will remain in the settlement fund after fees and costs are deducted.

is "designed to give specific minimum protections to individual workers" and to ensure that covered employees are neither overworked nor underpaid.  *Id.* (emphasis omitted). Employees can enforce their rights under the FLSA through an action for "their unpaid minimum wages, or their unpaid overtime compensation, as the case may be," and for "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

Employees generally cannot waive their rights under the FLSA.  The Supreme Court has explained that allowing employees' FLSA rights to be "abridged by contract or otherwise waived . . . would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."  *Barrentine*, 450 U.S. at 740 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

In *O'Neil*, for example, William O'Neil worked for two years as a night watchman for a building operated by Brooklyn Savings Bank.  324 U.S. at 699.  He was not paid overtime compensation, as the Bank determined that the (recently enacted) FLSA did not apply to its operation of the building.  *Id.* at 700.  Almost two years after O'Neil left his employment, the Supreme Court issued *Kirschbaum v. Walling*, 316 U.S. 517 (1942), which held that the FLSA did in fact apply to buildings such as the one operated by the Bank.  *O'Neil*, 324 U.S. at 702–03.  It was undisputed that, under *Kirschbaum*, the Bank owed O'Neil for unpaid overtime wages and for liquidated damages.  *Id.* at 703–04.  The Bank and O'Neil entered into an agreement under which

the Bank paid O'Neil the full amount of unpaid overtime wages and, in return, O'Neil

waived his right to liquidated damages. *Id.* at 700. O'Neil later sued the Bank for those

liquidated damages. *Id.*

The Supreme Court held that the release signed by O'Neil was invalid. *Id.* at 707.

Critical to the Court's decision was the fact that the release signed by O'Neil was not

"given in settlement of a bona fide dispute between the parties with respect to coverage

or amount due under the Act"—as noted, there was no dispute that O'Neil was owed

the liquidated damages—but was instead "a mere waiver of his right to liquidated

damages." *Id.* at 703. According to the Court, enforcing such a waiver would frustrate

the purposes of the FLSA:

> The legislative history of the Fair Labor Standards Act
> shows an intent on the part of Congress to protect certain
> groups of the population from substandard wages and
> excessive hours which endangered the national health and
> well-being and the free flow of goods in interstate
> commerce. The statute was a recognition of the fact that due
> to the unequal bargaining power as between employer and
> employee, certain segments of the population required
> federal compulsory legislation to prevent private contracts
> on their part which endangered national health and
> efficiency and as a result the free movement of goods in
> interstate commerce. To accomplish this purpose standards
> of minimum wages and maximum hours were provided.
> Neither petitioner nor respondent suggests that the right to
> the basic statutory minimum wage could be waived by any
> employee subject to the Act. No one can doubt but that to
> allow waiver of statutory wages by agreement would nullify
> the purposes of the Act. We are of the opinion that the same

>policy considerations which forbid waiver of basic minimum
>and overtime wages under the Act also prohibit waiver of
>the employee's right to liquidated damages.

*Id.* at 706–07 (footnotes omitted). The Court stressed that "the liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Id.* at 707 (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942)).

O'Neil explicitly left open the question "of what limitation, if any, Section 16(b) of the Act places on the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement." *Id.* at 714. Just one year later, the Supreme Court addressed that open question in *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108 (1946). The facts of *D.A. Schulte* were similar in many respects to the facts of *O'Neil*. A group of employees worked in a building operated by D.A. Schulte. *Id.* at 111. D.A. Schulte did not pay overtime wages, as it had concluded that the FLSA did not apply to its operation of the building. *Id.* After the *Kirschbaum* decision was announced, the employees claimed that they were owed overtime wages and liquidated damages. *Id.* D.A. Schulte disagreed, arguing that, even under *Kirschbaum*, its operation of the building was not covered by the FLSA.

*Id.*  The employees threatened to sue.  *Id.*  The parties negotiated a settlement of those threatened legal claims, under which D.A. Schulte agreed to pay the full amount of overtime wages, and the employees agreed to waive their right to liquidated damages. *Id.* at 111–12 & n.5.  The employees then sued D.A. Schulte for liquidated damages.  *Id.* at 112.

Even though the *D.A. Schulte* settlement, unlike the *O'Neil* settlement, was "a bona fide settlement of a bona fide dispute over the coverage of the Act," *id.* at 110, the result was the same:  The Supreme Court found that the release was invalid because allowing employees to waive their *potential* right to liquidated damages would frustrate the purposes of the FLSA, *id.* at 114–16.  The Court essentially relied on its analysis in *O'Neil*:  "The reasons which lead us to conclude that compromises of real disputes over coverage which do not require the payment in full of unpaid wages and liquidated damages do not differ greatly from those which led us to condemn the waivers of liquidated damages in the *O'Neil* case."  *Id.* at 115.  After acknowledging that its holding could create harsh results for employers, the Court concluded:

> We think the purpose of the Act, which we repeat from the
> *O'Neil* case was to secure for the lowest paid segment of the
> nation's workers a subsistence wage, leads to the conclusion
> that neither wages nor the damages for withholding them
> are capable of reduction by compromise of controversies
> over coverage.  Such a compromise thwarts the public policy
> of minimum wages, promptly paid, embodied in the Wage-

> Hour Act, by reducing the sum selected by Congress as
> proper compensation for withholding wages.

*Id.* at 116 (footnotes omitted).[4]

In the wake of *D.A. Schulte*, courts disagreed about whether it was possible for an FLSA claim to be settled by an employee agreeing to accept some (but not all) of what the employee claimed was due to him under the FLSA.[5]  Justice Robert Jackson (among others) believed that *D.A. Schulte* had made settlement of FLSA actions a practical impossibility:

> This Court has foreclosed every means by which any claim,
> however dubious, under this statute or under the Court's
> elastic and somewhat unpredictable interpretations of it, can
> safely or finally be settled, except by litigation to final
> judgment.  We have held the individual employee

---

[4]The Supreme Court noted that it was deciding only whether "the remedy of liquidated damages [can] be bargained away by bona fide settlements of disputes over coverage" and was not considering "compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment." *Id.* at 114–15.  But nothing in the Court's rationale provides a reason to believe that the Court would find that, although an employee cannot waive his right to wages or liquidated damages due under the FLSA to resolve a dispute over whether his employer was covered by the FLSA, he could waive his right to wages or liquidated damages to resolve a dispute over how many hours he worked.

[5]All courts agree that 29 U.S.C. § 216(c) provides one way to settle an FLSA action.  Under that provision, the employer agrees to pay all of "the unpaid minimum wages or the unpaid overtime compensation owing" to the employee under the supervision of the Secretary of Labor and, in return, "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under [§ 216(b)] to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages."

> incompetent to compromise or release any part of whatever
> claim he may have.  *Brooklyn Savings Bank v. O'Neil*, 324 U.S.
> 697; *cf. D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108. . . . No kind
> of agreement between the parties in interest settling
> borderline cases in a way satisfactory to themselves,
> however fairly arrived at, is today worth the paper it is
> written on.  Interminable litigation, stimulated by a
> contingent reward to attorneys, is necessitated by the
> present state of the Court's decisions.

*Walling v. Portland Terminal Co.*, 330 U.S. 148, 155 (1947) (Jackson, J., concurring).

Over the years, however, most federal courts have concluded that an employee

may waive her FLSA rights as part of a settlement of an FLSA action.  To a significant

extent, these courts rely (directly or indirectly) on a crucial footnote in *D.A. Schulte*.  In

that case, D.A. Schulte had pointed out to the Supreme Court that, in negotiating

settlements of FLSA lawsuits with federal contractors, the Administrator of the Wage

and Hour Division of the United States Department of Labor always insisted on full

payment of back wages, "but the claim for liquidated damages is the subject of

bargaining, and almost invariably the employee's counsel is willing to accept

considerably less than the total amount of liquidated damages.  After payment of the

amount agreed on, a judgment is entered dismissing the suit with prejudice, thereby

preventing the employee from seeking to recover more on the same claim."  *D.A.*

*Schulte*, 328 U.S. at 113 n.8.  In essence, D.A. Schulte suggested to the Supreme Court

that, if it did not enforce the employees' waiver, then neither the federal government

nor any other litigator would be able to settle FLSA lawsuits.

The Supreme Court rejected D.A. Schulte's suggestion in a footnote:

> Petitioner draws the inference that bona fide stipulated
> judgments on alleged Wage-Hour violations for less than the
> amounts actually due stand in no better position than bona
> fide settlements.  Even though stipulated judgments may be
> obtained, where settlements are proposed in controversies
> between employers and employees over violations of the
> Act, by the simple device of filing suits and entering agreed
> judgments, we think the requirement of pleading the issues
> and submitting the judgment to judicial scrutiny may
> differentiate stipulated judgments from compromises by the
> parties.  At any rate the suggestion of petitioner is
> argumentative only as no judgment was entered in this case.

*Id.*

Many courts—led by the Eleventh Circuit—have relied on this footnote in

holding that "[w]hen employees bring a private action for back wages under the FLSA,

and present to the district court a proposed settlement, the district court may enter a

stipulated judgment after scrutinizing the settlement for fairness."  *Lynn's Food Stores,*

*Inc. v. U.S. ex rel. U.S. Dep't of Lab.*, 679 F.2d 1350, 1353 (11th Cir. 1982).

That stipulated judgment, in turn, bars the employees from later pursuing the claims

that they have waived.

In the Eleventh Circuit, then, any settlement of an FLSA claim must be approved

by a judge (or by the Secretary of Labor under 29 U.S.C. § 216(c)).  *See, e.g., Walker v.*

*Kirkman Mgmt., LLC*, No. 6:20-cv-1149-ACC-EJK, 2022 WL 1028679, at *1 (M.D. Fla. Apr. 6, 2022). Other circuits take different approaches. The Fifth Circuit holds that, in an FLSA case, the parties can enter an enforceable settlement of a "'bona fide dispute as to the amount of hours worked or compensation due'" without the approval of a court or the Secretary of Labor. *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) (quoting *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005)). In the Second Circuit, the need for judicial approval of an FLSA settlement depends on whether the parties seek entry of judgment under Rule 41(a)(1)(A)(ii) (judicial approval required) or under Rule 68(a) (judicial approval not required).[6] Other circuits—including the Sixth Circuit—have not yet decided whether or under what circumstances an FLSA claim can be settled. *See Askew v. Inter-Cont'l Hotels Corp.*, No. 19-cv-24, 2022 WL 3161927, at *4, *7 (W.D. Ky. Aug. 8, 2022) (stating that "the Sixth Circuit hasn't reached this issue" and finding no authority to condition voluntary dismissal on the court's review); *contra Steele v. Staffmark Invs., LLC*, 172 F. Supp. 3d 1024, 1025 (W.D. Tenn. 2016) (noting that the court had previously

---

[6]*Compare Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ("Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."), *with Mei Xing Yu v. Hasaki Restaurant, Inc.*, 944 F.3d 395, 398 (2d Cir. 2019) ("[J]udicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims.").

rejected a stipulation of dismissal "because the parties had failed to submit the terms of the settlement or any argument on the fairness and reasonableness of the settlement").

That brings us to the Eighth Circuit.

### B. Settlement of FSLA Actions in the Eighth Circuit

In *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018), the Eighth Circuit reviewed the settlement of an FLSA action that had been brought by employees who alleged that their employer had underpaid them in violation of the FLSA. The parties settled the lawsuit; under the settlement, the employer agreed to pay a confidential amount to settle the wage claim and $87,500 to settle the attorney's-fee claim. *Id.* at 777. The district court approved the settlement of the wage claim, but did not approve the settlement of the attorney's-fees claim, reducing the fees award to $22,500.00. *Id.* The employees appealed. *Id.* at 778.

Even though the matter had been placed in considerable doubt by *O'Neil* and *D.A. Schulte* (as described above), the Eighth Circuit gave no indication that it had any doubts about whether employees could waive their FLSA rights as part of a settlement of an FLSA action. As far as the Eighth Circuit was concerned, the question was not whether FLSA actions could be settled, but whether and to what extent those settlements had to be approved by courts. *Id.* at 779. After identifying the question, the Eighth Circuit ducked it:

> [W]e recognize an apparent circuit split as to whether
> private settlements relating to FLSA claims require district
> court review. . . . Since neither party discusses whether
> district court approval is required, we need not address this
> issue. Instead, we will assume without deciding that the
> district court has a duty to exercise some level of review of
> the Agreement and the attorneys' fee award.

*Id.*

After declining to decide whether district courts have authority to review

settlements of FLSA actions, the Eighth Circuit went on to describe what that review

would entail *if* that review were authorized. According to the Eighth Circuit,

> where the parties have already agreed upon the fees to be
> paid, any required review need not be a line-by-line, hour-
> by-hour review of the attorneys' fees. Even assuming the
> district court had a duty to review the Agreement, at some
> level, for fairness and reasonableness, review of attorneys'
> fees included in a settlement agreement requires a certain
> level of deference by the district court to the parties'
> agreement.

*Id.* The Eighth Circuit went on to conclude that "the parties' agreed-upon attorneys'

fees are fair and reasonable." *Id.*

The Eighth Circuit next reviewed an FLSA settlement in *Barbee v. Big River Steel,*

*LLC*, 927 F.3d 1024 (8th Cir. 2019). In *Barbee*, as in *Melgar*, the parties settled an FLSA

action. *Id.* at 1026. In *Barbee*, as in *Melgar*, the agreement included one amount to settle

the wage claim and another amount to settle the attorney's-fees claim. *Id.* And in

*Barbee*, as in *Melgar*, the district court approved the settlement of the wage claim, but refused to approve the settlement of the attorney's-fees claim. *Id.*

Although the two cases were very similar, *Barbee* sharply deviated from *Melgar*. In *Melgar*, the Eighth Circuit reviewed the settlement of the attorney's-fees claim to determine whether it was fair and reasonable. *Melgar*, 902 F.3d at 779–80. In *Barbee*, however, the Eighth Circuit held that it did not have authority to do what it had done in *Melgar*. *Barbee*, 927 F.3d at 1027. The Eighth Circuit acknowledged that it had reviewed the agreement on attorney's fees in *Melgar*, but said that in *Melgar* it had merely assumed, but not decided, that courts had authority to conduct such reviews. *Id.* at 1026. According to the Eighth Circuit, *Melgar* left open the question "whether the authority to review FLSA settlements, or at least review settled attorney fees, exists at all." *Id.*

Once again, the Eighth Circuit expressed no doubts about whether plaintiffs in FLSA actions could waive their rights under the FLSA pursuant to settlements. To the contrary, the Eighth Circuit described *O'Neil* and *D.A. Schulte*—which, again, were widely understood as prohibiting *any* release of FLSA rights—as cases that merely "require[d] judicial approval for some releases of FLSA claims." *Id.* The Eighth Circuit noted a circuit split over whether *O'Neil* and *D.A. Schulte* should be "extend[ed] . . . to require judicial approval of *all* FLSA settlements." *Id.* After explaining that "[w]e have

-15-

never taken a side on this issue," *id.* at 1027, the Eighth Circuit ducked the question

again—at least in part.  The Eighth Circuit held, in essence, that since it was being asked

only to review the settlement of an attorney's-fees claim, and since it believed that "any

authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to

review of settled attorney fees, [it] need not decide [its] view on the circuit split . . . ."

*Id.*  After explaining the rationale for its holding that, in an FLSA action, "the district

court lack[s] authority to review . . . settled attorney fees," *id.* at 1026, the Eighth Circuit

concluded with one caveat:  "if FLSA settlements are subject to judicial

review"—which, again, the Eighth Circuit was unwilling to decide—"the court would

retain the authority to ensure the attorney fees were in fact negotiated separately and

without regard to the plaintiff's FLSA claim, and there was no conflict of interest

between the attorney and his or her client."  *Id.* at 1027 n.1.

The latest word from the Eighth Circuit on judicial review of FLSA settlements

came in *Vines v. Welspun Pipes Inc.*, 9 F.4th 849 (8th Cir. 2021).  The parties to an FLSA

action negotiated a settlement that covered both the wage claim and the attorney's-fees

claim.  *Id.* at 852.  The district court declined to approve the parties' agreement after

finding that the settlement of the wage claim had not been negotiated separately from

the settlement of the attorney's-fees claim.  *Id.* at 853.  The parties went back to the

drawing board.  After further negotiations, the parties were able to settle the wage

claim—and that settlement was later approved by the district court—but they were

unable to settle the attorney's-fees claim.  *Id.*  The plaintiffs simply moved for an award

of attorney's fees and costs.  *Id.*  The district court granted the motion in (very small)

part and awarded one dollar in fees.  *Id.*  The plaintiffs appealed both the district court's

finding that the original settlement of the wage claim had not been negotiated

separately from the settlement of the attorney's-fees claim and the district court's

finding that plaintiffs' counsel were entitled to only one dollar in fees.  *Id.* at 853.

The Eighth Circuit began its analysis by reviewing its recent decisions regarding

the review of FLSA settlements:

> We have acknowledged a split among the circuits
> over whether judicial approval is required for all FLSA
> settlements.  *Barbee*, 927 F.3d at 1026.  In *Barbee*, we declined
> to take a side on the issue and instead provided a narrow
> holding about the settlement of FLSA attorneys' fees:
> "[A]ny authority for judicial approval of FLSA settlements
> . . . does not extend to review of settled attorney fees."  *Id.* at
> 1027.  But, assuming that judicial approval was required for
> the FLSA claim, we left to district courts "the authority to
> ensure [(1)] the attorney fees were in fact negotiated
> separately and without regard to the plaintiff's FLSA claim,
> and [(2)] there was no conflict of interest between the
> attorney and his or her client."  *Id.* at 1027 n.1.

*Id.* at 853-54.  Yet again, the Eighth Circuit "[left] . . . for another day" the question

"whether judicial approval is required for all FLSA settlements," noting that "[n]either

the plaintiffs nor the defendants ha[ve] asked us to take a side in the circuit split

-17-

regarding judicial approval of FLSA settlements." *Id.* at 854 n.1. And yet again, the Eighth Circuit gave no indication that it had any doubt that employees could waive their FLSA rights when settling FLSA actions. The Eighth Circuit went on to uphold the district court's finding that the wage claim and the attorney's-fees claim had not been separately negotiated and to find that the district court abused its discretion in awarding attorney's fees without first calculating a lodestar. *Id.* at 854–58.

With the Eighth Circuit's recent case law in mind, the Court now turns to the proposed settlement of this action.

## C. The Evereve Settlement

### 1. Necessity of Judicial Approval of FLSA Settlements

In the past, this Court has assumed that the parties to an FLSA action may enter a valid and binding settlement under which the plaintiff employees waive any rights they may have under the FLSA in return for a payment from the defendant employer. *See Johnson v. Thomson Reuters*, No. 18-CV-0070 (PJS/HB), 2019 WL 1254565, at *2 (D. Minn. Mar. 19, 2019). The Court is not inclined to question that assumption. Notwithstanding the doubts created by *O'Neil* and *D.A. Schulte*, it is difficult to find a federal court that has recently expressed any reservations about whether employees may waive FLSA rights in settling FLSA lawsuits. The Eighth Circuit has certainly not expressed such reservations; to the contrary, in *Barbee* the Eighth Circuit expressed doubt only about

whether parties could be required to seek judicial approval of FLSA settlements, given that the decision whether to settle a lawsuit is normally "'solely in the hands of the parties'" and given that the right to dismiss a lawsuit is normally "unconditional." 927 F.3d at 1027 (quoting *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir. 1984)).

In the past, this Court has also assumed that judicial approval of an FLSA settlement was necessary.  *See Johnson*, 2019 WL 1254565, at *2 & n.1.  Admittedly, the Court has not previously given the matter much thought, as no party before the Court ever questioned the assumption.  The additional research conducted by the Court in this case reveals that the matter is more complicated than the Court understood.  (Judge Xavier Rodriguez's order in *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608 (W.D. Tex. 2005), was particularly instructive.)  But the Court is not inclined to revisit its assumption for at least three reasons:

First, the Court continues to believe that judicial approval of all FLSA settlements is necessary.  The widespread assumption by courts that employees may waive FLSA rights when settling lawsuits traces back to the crucial footnote in *D.A. Schulte*.  That footnote "differentiate[d] stipulated judgments from compromises by the parties" and suggested that employees could waive FLSA rights in connection with the former, but not in connection with the latter.  328 U.S. at 113 n.8.  The Supreme Court's rationale for the distinction was that stipulated judgments, unlike private settlements, required

-19-

"submitting the judgment to judicial scrutiny." *Id.* Without "judicial scrutiny" of an

FLSA settlement, that settlement would be indistinguishable from the settlement that

was found *invalid* in *D.A. Schulte*.

Second, neither Shanley or Eizelman, on the one hand, nor Evereve, on the other,

is arguing that this Court does not have authority to approve their settlement, or that

approval of their settlement is not required.  The Court is loathe to address such

complicated issues without receiving briefing from both "sides" of the issues.  The

Court will follow the lead of the Eighth Circuit, which has declined to determine

whether judicial approval is required for all FLSA settlements when "[n]either the

plaintiffs nor the defendants ha[ve] asked us to [do so]." *Vines*, 9 F.4th at 854 n.1.

And finally, it does not matter whether this Court has authority to approve an

FLSA settlement because, even if it does, the Court could not approve the settlement

reached by the parties to this lawsuit.  It is to that issue that the Court now turns.

### 2.  Failure to Negotiate Separately

In settling this action, the parties agreed that plaintiffs' claim for attorney's fees

would be paid by giving the attorneys a percentage of the common settlement fund of

$200,000.  Under *Barbee*, this Court does not have authority to review the settlement of

the attorney's-fees claim except "[1] to ensure the attorney fees were in fact negotiated

separately and without regard to the plaintiff's FLSA claim, and [2] there was no

conflict of interest between the attorney and his or her client."  *Barbee*, 927 F.3d at 1027

n.1; *see also Vines*, 9 F.4th at 853–54.

As the parties concede, "the [attorney's] fees were not negotiated separately from

Plaintiffs' FLSA claim.  Instead, Plaintiffs' attorneys' fees are based on a percentage of

the fund created by the common fund settlement."  ECF No. 37 at 3.  And because the

settlement of the attorney's-fees claim was intertwined with the settlement of the wage

claim, a conflict of interests arose between plaintiffs and their attorneys.  As Judge

Steven Colloton explained in *Vines*:

> The basic problem is this:  When a lawyer
> representing employees who sue for unpaid wages
> simultaneously engages in settlement negotiations over the
> merits of the claim and his own fee, "a significant conflict of
> interest between client and attorney is created."  *Staton v.
> Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (quoting *Court
> Awarded Attorney Fees, Report of the Third Circuit Task Force*,
> 108 F.R.D. 237, 266 (1985)).  In combined negotiations,
> plaintiffs' counsel negotiates "a fee ultimately destined for
> his pocket" when "all thoughts ought to be singlemindedly
> focused on" the interests of his clients.  *Obin v. Dist. No. 9 of
> Int'l Ass'n of Machinists & Aerospace Workers*, 651 F.2d 574,
> 582 (8th Cir. 1981).  The defendant employer, for its part, is
> interested "only in disposing of the total claim," and is
> therefore indifferent to the allocation of a settlement between
> plaintiffs' counsel and the plaintiffs.  *Staton*, 327 F.3d at 964
> (internal quotation omitted).  With no resistance from the
> defendant, there is little to deter plaintiffs' counsel from
> urging "settlement at a low figure or on a less-than-optimal
> basis in exchange for red-carpet treatment on fees."
> *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st
> Cir. 1991).

*Vines*, 9 F.4th at 858–59 (Colloton, J., dissenting).

The parties argue that the percentage-of-the-fund approach does not, in fact, create conflicts of interest, but instead "keeps Plaintiffs and their counsel's interests in line to work to achieve the largest common fund they can for the Plaintiffs and the class with attorneys' fees awarded as a percentage of that fund." ECF No. 37 at 13. The parties are mistaken. The parties not only ignore the conflict described by Judge Colloton, but they ignore other potential conflicts.

To begin with, the percentage-of-the-fund approach provides no incentive for plaintiffs' counsel to push for an easy claims process that maximizes the ability of potential opt-in plaintiffs to submit claims and be paid. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782–83 (7th Cir. 2014) (describing the many barriers to claim submission in a class-action case and noting that class counsel "lack[ed] any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims").[7] Likewise, there is no incentive for class counsel to strive to reduce the costs of fund administration. Regardless of how much of the settlement fund is eaten up by administrative fees and regardless of how many plaintiffs actually benefit from the settlement, counsel will receive the same payment: one-third of $200,000.

---

[7]In this case, in fact, the Court has already pointed out multiple instances of ambiguous, overbroad, or erroneous language in the settlement agreement and notice—all errors that would have negatively affected plaintiffs.

Indeed, there is the potential for collusion between plaintiffs' counsel and Evereve.  (To be clear, there is no evidence of actual collusion.)  Any unclaimed amount in the settlement fund returns to Evereve.  ECF No. 38-1 at 8.  Plaintiffs' counsel could ask Evereve to accept a higher settlement fund amount; in exchange, counsel would agree to a more defendant-friendly notice and claims process.  Then counsel would get 33% of a larger pot, and Evereve would stand to ultimately pay less overall if fewer potential opt-in plaintiffs submit claims.  Everyone wins—except the employees.

Far better would be a contingency agreement in which the plaintiffs and counsel agree that counsel gets a set percent of what the plaintiffs *actually* recover.  *See* Samuel Issacharoff, *Class Action Conflicts*, 30 U.C. Davis L. Rev. 805, 829–30 (1997) ("[T]o the extent the attorneys hope to prosper in the representation, that reward should be a direct product of what they return to the class.").  Unlike the percentage-of-the-fund method, such an arrangement would be akin to a true contingency fee and would provide incentives for counsel to press for all plaintiffs' benefit.

In sum, the Eighth Circuit has held that *if* this Court has authority to approve an FLSA settlement, it may not approve such a settlement without first ensuring that "the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim" and that "there was no conflict of interest between the attorney and his or her client."  *Barbee*, 927 F.3d at 1027 n.1; *see also Vines*, 9 F.4th at 853–54.  Neither

condition is true here.  For that reason, the Court denies the parties' joint motion for approval of their proposed settlement.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that the parties' renewed joint motion to approve the settlement agreement [ECF No. 37] is DENIED.

Dated:  November 18, 2022                     s/Patrick J. Schiltz
                                             Patrick J. Schiltz, Chief Judge
                                             United States District Court